# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

WATERFRONT PETROLEUM
TERMINAL COMPANY,

    Plaintiff/Counter-Defendant,

v.                                                                                        Case No. 19-13621

DETROIT BULK STORAGE, INC.,

    Defendant/Counter-Plaintiff.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO DISMISS

Plaintiff Waterfront Petroleum Terminal Company ("Waterfront") the owner of a maritime facility on the Detroit River, brings this action against a neighboring lessee, Defendant Detroit Bulk Storage, Inc. ("DBS"), over the usage of wharf space. DBS brings a counter-complaint for damages stemming from a November 26, 2019 dock collapse. Waterfront has filed a motion to dismiss DBS's counter-complaint regarding the dock collapse. (*See* ECF No. 40.)[1] The motion is fully briefed, and the court finds a hearing unnecessary. E.D. Mich. L.R. 7.1(f)(2). The court will deny Waterfront's motion because it finds (1) that DBS has sufficiently alleged a claim which it has standing to

---

[1]     At the joint request of the parties, the court previously paused further adjudication of all motions related to DBS's dock collapse counter-complaint in light of Defense counsel's illness. Subsequently, DBS retained new counsel (*see* ECF Nos. 64-65), and the court concluded that limited further discovery regarding the counter-complaint was appropriate. Given these developments, at this juncture, the court determines that adjudication of the motion to dismiss would help further focus the parties' renewed discovery efforts.

pursue, and (2) that Rule 17(a) indicates that DBS is the real party in interest for such a claim.

## I.  BACKGROUND

Since 2007, Plaintiff/Counter-Defendant Waterfront has operated a marine fuel terminal, with a physical address of 5431 West Jefferson Avenue, for commercial vessels on the Detroit River. (ECF No. 43-3, PageID.998; ECF No. 44, PageID.1232.) Later, Waterfront purchased two adjoining parcels at 5701 and 5601 West Jefferson with dock frontage immediately downriver of its fueling terminal. (ECF No. 43-3, PageID.994.) Waterfront used the newly acquired land to open a bulk cargo terminal to accept deliveries from the freighters operating on the Great Lakes. (*Id.*)

In 2019, Defendant/Counter-Plaintiff DBS entered a month-to-month oral lease[2] for a riverfront parcel at 5851 West Jefferson (the "Revere Dock"), which is owned by Revere Dock, LLC. (ECF No. 43-2, PageID.952-53; ECF No. 66-1, PageID.2709.) The Revere Dock has approximately 540 feet of river frontage and is immediately adjacent to Waterfront's bulk dock. (ECF No. 43-2, PageID.954.) The Revere Dock is bordered by Waterfront's facility upstream and by an active boat slip and marine facility operated by the U.S. Army Corps of Engineers on the downstream side. (ECF No. 43-2, PageID.960.) DBS operated a bulk cargo facility at the Revere Dock between August and November 2019 until a dock collapse on November 26, 2019 suspended operations at the Revere Dock. (ECF No. 44, PageID.1234; ECF No. 57-5, PageID.2545.)

---

[2]  While the issue of whether a lease exists, oral or otherwise, may be factually contested, the court notes that month-to-month oral leases do not implicate Michigan's statute of frauds. *See* 11 Mich. Civ. Jur. Frauds, Statute of § 95. So, for the purposes of the present motion to dismiss, the court must assume that such an oral lease exists and is valid.

In December 2019, Waterfront initiated the present suit against DBS seeking a declaratory judgment preventing DBS from utilizing its dock space along the Detroit river and seeking related damages and costs. (*See* ECF No. 1.) DBS filed a counter-complaint against Waterfront alleging that Waterfront's negligent "dredging activities. . . resulted in a dock failure impairing and interfering with DBS's business" at the Revere Dock. (ECF No. 5, PageID.35.) The counter-complaint requests that the court "[a]ward DBS actual and consequential damages incurred by the actions of [Waterfront]," punitive damages, and injunctive relief limiting Waterfront's usage of dock space "until the Revere Dock has been remediated." (*Id.*, PageID.39.) The counter-complaint does not specifically enumerate the damages that DBS incurred as a result of being unable to receive deliveries at the Revere Dock following the dock collapse. (*See id.*)

Both parties have now also filed affidavits regarding the counter-complaint.[3] Waterfront has filed an affidavit from Steven Erickson the president of Revere Dock, LLC. (ECF No. 61-1, PageID.2674.) Erickson attests that DBS "does not have an ownership interest in the Revere Dock" and that his company "has not assigned any rights to Detroit Bulk Storage . . . to pursue a claim for recovery of damages sustained by Revere Dock, LLC, including, but not limited to, physical damages to the seawall and shoreline, or other costs incurred by Revere Dock, LLC as a result of the dock failure." (*Id.*, PageID.2675.) DBS filed an affidavit by its vice-president Noel Frye. (ECF No. 66-1.) Frye attests that DBS has paid Revere Dock, LLC approximately $130,000/year to

---

[3]   While the court summarizes these affidavits for additional context, it does not consider the contents of these affidavits while ruling on the present motion to dismiss. *See Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 255 F.R.D. 443, 446 (W.D. Mich. 2009) (noting that a court cannot consider "an affidavit attached to a motion to dismiss" without "convert[ing] the motion into one for summary judgment").

3

lease the Revere Dock beginning in 2019. (*Id.,* PageID.2710.) He states that as a result of the November 26, 2019 dock collapse, DBS incurred "significant monetary damages—separate and excluding damages to the sea wall" including "lost profits, split boat charges, fuel costs, material costs, attorney fees and lost opportunities." (*Id.*)

Waterfront now brings a motion to dismiss DBS's dock collapse counter-complaint. (ECF No. 40.)

## II.  STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to plaintiff and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015).

Federal Rule of Civil Procedure 8 requires a plaintiff to present in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "To state

4

a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss, the court may consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. DISCUSSION

Waterfront moves to dismiss DBS's counter-complaint on two grounds. First, Waterfront argues that DBS, as a lessee, "does not have standing under Article III of the United States Constitution to bring this claim" because it lacks an ownership interest in the Revere Dock. (ECF No. 40, PageID.680.) Second, Waterfront argues that "DBS is not the proper party to bring this [counter-complaint] under Federal Rule of Civil Procedure 17(a) because it is not the owner of the dock in question." (*Id.*)

For the reasons explained below, the court finds that Waterfront's motion to dismiss must be denied.

5

### A. Article III Standing

The first issue is whether DBS, as a month-to-month lessee of the Revere Dock, has standing under Article III of the Constitution to pursue a claim for damages. The court finds that DBS has alleged a sufficiently personalized injury to establish Article III standing.

The test for standing is well established. "The Supreme Court has enumerated the following elements necessary to establish standing:

> First, [the] [p]laintiff must have suffered an injury in fact–an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of–the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Parsons v. U.S. Dept. of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In addition to these constitutional requirements, the Sixth Circuit has previously held:

> [A] plaintiff must also satisfy three 'prudential' standing requirements: (1) a plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a "generalized grievance" shared by a large class of citizens; and (3) in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. Coyne v. Am. Tobacco Co., 183 F.3d 488, 494 (6th Cir.1999). "These additional restrictions enforce the principle that, as a prudential matter, the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Id.* (quotations and citation omitted).

*Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009).

Since *Wuliger* was decided, however, the U.S. Supreme Court has "called [the prudential standing] line of precedent into doubt on the ground that prudential standing sits uncomfortably next to the courts' 'virtually unflagging' duty to decide cases within

their jurisdiction." *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 542 (6th Cir. 2021) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014).) But regardless of the shifting nature of the overall doctrine of prudential standing, the Sixth Circuit continues to hold that "[g]enerally, plaintiffs cannot establish standing based on the legal rights or interest of others." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 557 (6th Cir. 2021) (citing *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004)); see also *EMW Women's Surgical Ctr., P.S.C. v. Friedlander,* 960 F.3d 785, 813 (6th Cir. 2021) (Bush, J., dissenting) (noting that regardless of the continued viability of the prudential standing doctrine "I have my doubts that an injury can be 'particularized' enough to constitute an injury in fact when the alleged injury belongs solely to a third party, as it does here"), *cert. granted in part sub nom. Cameron v. EMW Women's Surgical Ctr., P.S.C.,* 141 S. Ct. 1734, 209 L. Ed. 2d 503 (2021).

Waterfront argues that DBS's counter-complaint for damages does not actually assert DBS's "own legal rights and interests" when it alleges that Waterfront's dredging led the seawall to collapse at the Revere Dock. (ECF No. 40, PageID.686.) Waterfront contends that "DBS asserts damages against Waterfront because of physical damages to the Revere Dock" but "DBS [is] not the owner of the Revere Dock." (*Id.*) In sum, Waterfront's position is that only Revere Dock, LLC, as the owner of the property, has a right to bring a claim for damages that occurred on the property. Waterfront's motion does not appear to challenge any other elements required for Article III standing.

The parties appear to be talking past each other regarding what types of damages are at issue in the counter-complaint. Waterfront's position seems to be

7

focused on the damages that occurred to the seawall (and the invariably significant costs of repairing the seawall), but Waterfront ignores that DBS's counter-complaint does not specifically state it is seeking damages for such repairs. Rather, the counter-complaint requests generally that the court "[a]ward DBS actual and consequential damages incurred by the actions of [Waterfront]." (ECF No. 5, PageID.35.)

Consequently, the real question before the court is whether a commercial lessee has standing to pursue a claim against the tortfeasor for costs the lessee itself "incurred" as a result of damage that greatly restricted the lessee's use of leased real property. Regardless of whether third-party standing limitations are considered a prudential concern, or part of Article III's constitutional requirements, the court finds that DBS has at least some interest in the Revere Dock as a tenant that could plausibly have been financially affected by the collapse of the seawall.

The Sixth Circuit's recent decision in *CHKRS, LLC v. City of Dublin*—contemplating a tenant's standing in the context of a Fifth Amendment takings claim—is instructive. 984 F.3d 483 (6th Cir. 2021). In *CHKRS*, the plaintiff-lessee alleged a local municipality trespassed on the property the plaintiff was renting and destroyed its driveway approach replacing it with a new, dangerous driveway layout. *Id.* at 488. Because a lessee can pursue a common law claim for trespass and has an established "right to payment for the value of the lessee's interest in property taken through eminent domain," the court found that the plaintiff had pled "an obvious Article III injury" regardless of whether the "plaintiff's claim might fail on the merits." *Id.* at 488-89 (citations omitted).

Precedent suggests that tenants under Michigan substantive law acquire their own limited interests in leased real property. See *Spartan Stores, Inc. v. City of Grand Rapids,* 307 Mich. App. 565, 575, 861 N.W.2d 347, 353 (2014) ("[T]he word 'interest' as applied to land embraces and includes leasehold interests and rights derived therefrom.") (quotation omitted); *Walgreen Co. v. Macomb Twp.*, 280 Mich. App. 58, 72, 760 N.W.2d 594, 602 (2008) (O'Connell, J., dissenting) ("Leases provide a real-property interest."); *Thomas v. Rex A Wilcox Trust*, 185 Mich. App. 733, 738, 463 N.W.2d 190 (1990) ("Oil and gas leases are considered real property interests."). In the context of insurance law, this court has also previously noted that a Michigan tenant acquires an insurable "financial interest in the property it rents," based, in part on "the improvements which he or she places on the leased property." *Shathaia v. Travelers Cas. Ins. Co. of Am.*, 984 F. Supp. 2d 714, 724-25 (E.D. Mich. 2013) (Duggan, J.) (quoting 44 C.J.S. Insurance § 346 (2013)).

Because DBS plausibly alleges that it possessed a valid leasehold for the Revere Dock at the time of the November 26, 2019 collapse, the court finds that DBS has standing to pursue claims for damages it *incurred* due to the dock collapse. It is plausible that DBS, as a lessee, suffered its own injuries from the collapse separate from the injuries suffered by the property owner. Common sense suggests, given the dramatic nature of the collapse, that it is plausible that improvements DBS made to the property may have been destroyed, product lost, and other costs incurred due to the shutdown of operations dock. And such alleged injuries are fairly traceable, as a conceptual matter, to Waterfront's dredging. Waterfront is free to argue at summary judgment and at trial that DBS did not—or could not under the terms of the lease—incur

damages as alleged in the counter-complaint,[4] but the Sixth Circuit was clear in *CHKRS* that "once the plaintiff has alleged a 'colorable' or 'arguable' claim that the defendant has invaded a legally protected interest, the plaintiff has met this element of an Article III injury." *See CHKRS, LLC*, 984 F.3d at 489 (citations omitted).

### B. Proper Party in Interest Under Rule 17(a)

Waterfront alternatively asserts that DBS is not the "proper party in interest" to bring the counter-complaint under Federal Rule of Civil Procedure 17(a) and therefore seeks dismissal. (ECF No. 40, PageID.687.) Waterfront argues that because DBS was not the owner of the Revere Dock "it is not entitled to enforce the rights it asserts in its counter-[complaint]." (*Id.*) The court, however, finds that this argument, as presently presented, is unconvincing.

Federal Rule of Civil Procedure 17(a) states that "[a]n action must be prosecuted in the name of the real party in interest." "[T]he real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law. The real party in interest analysis turns on whether the substantive law creating the right being sued upon affords the party bringing suit a substantive right to relief." *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 730 (6th Cir. 2016) (quoting *Certain Interested Underwriters at Lloyd's, London, Eng. v. Layne*, 26 F.3d 39, 42-43 (6th Cir. 1994)). The purpose of Rule 17(a) is "to protect the defendant against a subsequent action by the

---

[4] Indeed, in its reply brief, Waterfront now explicitly argues that "DBS has provided *no evidence* to Waterfront in support of the $7,000,000.00 claim." (*See* ECF No.56, PageID.2446. (emphasis added)) Without a citation to the record, the court is unsure where DBS asserted such a large amount of damages, but regardless, an overbroad claim for damages is something that should be addressed in a motion for summary judgment and not as an issue of Article III standing.

10

party actually entitled to recover." *Anderson v. Old Nat'l Bancorp*, 675 F.Supp.2d 701, 708 (W.D.Ky. 2009) (quoting Fed. R. Civ. P. 17 advisory committee note).

Therefore, to determine if DBS is the real party in interest, the court must look to Michigan substantive law. *See* § 1544 Governing Law, 6A Fed. Prac. & Proc. Civ. § 1544 (3d ed.). As the court has explained above, Michigan law recognizes that leaseholders in have a "leasehold interest" in such property, *see Spartan Stores, Inc.*, 861 N.W.2d at 353, and Waterfront cites no case law suggesting that a leaseholder cannot bring a claim for damages it personally incurred as a result of a neighbor's alleged negligence. Absent some contractual assignment of rights, the court struggles to see how DBS could not bring a tort claim for damages it personally incurred as a result of alleged negligent conduct. *See Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 521, 486 N.W.2d 612, 615 (1992) (explaining that the purpose of tort law "is to protect society's interest in freedom from harm"). To be sure, if DBS as a tenet, attempts to bring a claim for damages clearly incurred *only* by the property's owner, it would likely raise legitimate Rule 17(a) concerns. *See Van Wormer v. Crane,* 51 Mich. 363, 368, 16 N.W. 686, 688 (1883) (Sherwood, J., concurring) (noting that under Michigan common law a tenant is not liable "to rebuild the premises which have become ruinous or accidentally destroyed by fire" which was not caused by "negligent or willful misconduct on his part"). And much of Waterfront's trepidation may be based on a misunderstanding between the parties on the scope of damages that DBS seeks to assert.[5] But, reading the counter-complaint in the light most favorable to DBS, the court

---

[5] The court encourages the parties to use the reopening of discovery as an opportunity to clarify this issue.

11

thinks it is plausible that DBS incurred its own damages as lessee separate and distinct from the damage to Revere Dock, LLC's real property. The court sees no reason that DBS's entire counter-complaint must be dismissed on Rule 17(a) grounds.

## IV. CONCLUSION

For the reasons explained above, the court finds that DBS has standing to pursue a claim, against the alleged tortfeasor Waterfront, for damages it incurred after its operations were suspended due to damage to the facility it leased. And such claims are not barred by Rule 17(a). Therefore, Waterfront's motion to dismiss DBS's counter-complaint must be denied. Accordingly,

IT IS ORDERED that Plaintiff/Counter-Defendant Waterfront's Motion to Dismiss (ECF No. 40) is DENIED.

                                                                       s/Robert H. Cleland               /
                                                                       ROBERT H. CLELAND
                                                                       UNITED STATES DISTRICT JUDGE

Dated: December 3, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 3, 2021, by electronic and/or ordinary mail.

                                                                       s/Lisa Wagner                   /
                                                                       Case Manager and Deputy Clerk
                                                                       (810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\19-13621.WATERFRONT.MTD.AAB.RHC.docx